Good morning again, Your Honors. It is a near certainty that Mr. Jines will die in prison. This court has warned that death in prison is not to be ordered lightly and that a defendant who will not outlive his sentence, that factor should give pause to the district court at the time of sentencing. A sentencing that requires a defendant to die in prison is notably harsher than a sentence that allows them to die on the outside. It requires the defendant to have no control over the circumstances of his death and to be separated from his friends and family at the time of his death. But the court certainly took that into account in deciding this case and actually said he was not going to use the life expectancy as a sentencing boundary and talks about the age and the court should not, you know, the fact that Daisy talked about age and the court should not impose a life sentence and he's acknowledged the various statistics and he says the case should be decided on its own merits and he rejected this and said it would be impossible to overstate the depravity of your conduct in this case. So the court certainly took into account that argument. I have two points on that, Your Honor. First, that is a point that the government makes in their brief. The government urges that this court will not disturb the presumption of reasonableness that applies to a sentence in cases where the district court recognizes the likelihood of death in prison but then concludes that other factors warranted the sentence as you're saying that the circumstances of the case were reprehensible. However, one of the cases that the government relies on is a case called Kutz. In that case, the defendant was a bank robber who was 77 at the time of sentencing and was facing 70 to 87 months in prison. I looked at the sentencing transcript for that case and the district court's acknowledgement has a whole different tone and demeanor. The court says, Daniel Kutz stands before me as a human tragedy. Your statement a moment ago that a sentence within the guideline range is potentially a life sentence is a chilling thought. There's no question about that. Now, that's fundamentally different from what the district court said in this case. This court has indicated that a death in prison should give the sentencing court pause. And in this case, all the judge said, I've heard and seen those statistics before. I'm not sure I grasp them. I think each case is decided on its own merits as yours will be. One, the court says he's not sure he grasps the statistics. We're left totally without guidance as to did the district court consider that factor? Did he just brush it aside, which is as it seems? Ms. Varner, let me ask you. The argument that you're making comes up most often with much older defendants, often with relatively speaking shorter terms of imprisonment under the guidelines or otherwise are likely to amount in practical terms to death sentences, or to life sentences. Excuse me. The concern I have here is, this is a case where the sentencing commission would have said life absolutely, right? I mean, we're off the charts on the offense level. Even with criminal history category one. And while nobody does these things lightly, we've got a pretty broad sweeping policy statement by the sentencing commission that, yes, this is appropriate, whether he's 21 or 30 or 40, however old he is. Yes, your honor. And I think that actually goes to the second point that I wanted to make on the prior question. First, the district court kind of brushed over this. But second, while the district court does make a great record about the actual offense itself, as you're saying that the guidelines would have recommended in this case 340 years. And if Mr. Gines had actually received a much greater sentence, we would have actually less to argue about in front of this court. I mean, that's a weird quirk of the way the guidelines say to work with these multiple offenses. Yes, your honor. But surely you're not arguing we ought to worry about the difference between life and 340 years? No, your honor. What I'm arguing is that in this case, where life would have been warranted under the guidelines, and the sentence was so high, the guideline range 340 years, the judge departed 283 years below the guideline range. So what we're talking about, in essence, is a difference of three years between the sentence that would have given him the hope of reaching a release date and dying on the outside of prison, and a sentence that will almost certainly cause him to die within prison. I assume you're talking about the midpoint on a bell curve, right? I'm talking about the- For life expectancy? Right, yes. Which is, I believe Mr. Daisy figured 81.9 years and told the district court anything beyond 53.1 years is a life sentence. So we have this very narrow window in this case of three years. And we have a judge that was willing, even in light of the reprehensible facts in this case, we have a judge that was willing to depart 283 years below the guideline range. So we're left with this question when he brushes over this, what Mr. Is this an offense that should result in a 37-year-old man dying in prison? We have a court who is giving some credence to an argument here. He's departing 283 years below the guideline. So the question becomes, what about those three years? Are we certain on the record of this case that the district court adequately considered their 3553 factors when he just made this statement that brushed over this fundamental argument? Is this really about just three years? The difference between the sentence that he got and the sentence that Mr. Daisy figured would cause him to die in prison is three years. Yeah, but you're not really arguing over three years here. And you're not arguing about what his actual life expectancy is. This isn't a debate about the validity of the life expectancy tables. No, Your Honor. You want a sentence that is something less than a life sentence. Right. In ordinary terms, not statistical terms. Correct, Your Honor. But that's just to point out we had a judge that was giving some credence to the facts. Mr. Daisy made an extended argument about marginal deterrence in this case. And we have a judge that was giving some credence who sentenced far below the guideline range. And we wanted to bring the question to this court that a sentencing judge is required to discuss and in this case, is the district court statement that I've seen those statistics before. I'm not sure I grasp them. Is that enough to address the fundamental consideration in this case of the sentence that requires Mr. Giants to die in prison? Right. If we remand and the judge decides, okay, I'll give you the guidelines, 340 years, would that be acceptable? Obviously, we would be appearing before you again at that point, Your Honor. We would be appealing the reasonableness of that sentence. With the bottom of the guideline range. Yes. Our basis of this sentence, because at this point, the judge has already decided that a 56-year sentence meets the 3553 factors. With the exception that our argument is that he did not give proper consideration to the fundamental question that Mr. Daisy raised, which is, is this a case where a 37-year-old man should die in prison? I think that's exactly what he did. He's clearly attempting to achieve a life sentence here. I don't know what to make of the, I'm not sure I grasp the statistics statement. I mean, that doesn't make a whole lot of sense. But it's very clear that the judge was trying to achieve a life sentence here. Based on the severity of these crimes and the fact that this defendant is a child molester, not just a child pornography offender. I certainly understand your point of view, Your Honor. But in our view, that statement that you're expressing, that you're not sure, when he says, I'm not sure I grasp them, with a sentence of this great length, we have to ask this court, was that enough? So then, so then just tell me what the three years, how old would he be if it was three years less and he served the full sentence? So maybe about 70, in the like 78-year-old range? So then in terms of the court looking at, because statistically, at least he was expected to die in 44 years, and 44 plus 37 puts him at 81, right? Right. So when you do the math in terms of what the court did, or what you wanted, do you want it 77 or something less than 77? That's what I'm trying to get clear. We just want an assurance that there was an adequate consideration of that factor. But I'm just trying to figure out this three years, because the judge doesn't have to necessarily even accept the statistical table. Correct, Your Honor. I'm not sure Mr. Daisy asked for a particular sentence. He can't get less than 15. So we just want to ask this court, was the district court statement enough? And because he's sentenced so far below guidelines, we believe that there is a chance that if he comes back, the district court may say, okay, let's talk more about these statistics. And I am going to depart farther on this sentence. If I could just pursue a couple of other matters quickly. In these calculations, were people considering the 15% good time credit that's available? Yes, Your Honor. Okay. And could you address the government's waiver argument? Yes, Your Honor. Waiver is an intentional relinquishment or abandonment of a known right. There's no evidence on the record that Mr. Daisy, having made this argument about the life sentence, abandoned or backed off that argument. Well, the judge asked specifically, have I said enough to address your arguments? And he got an evasive response, but certainly not a no. Correct, Your Honor. But at the most, we would say that that was forfeiture, at the most. And that's just a negligent omission. And that would still, what the district court did in this case, still then would not meet the clear order standard. And unless this court's had any other questions, we would ask that you vacate the sentence in remand. All right, thank you. Mr. Ong. Good morning, Your Honors. Winfield Ong for the United States. I would confess being puzzled by the argument I just heard, and that it sounds to me like the defense has acknowledged now that the judge did give credence. In fact, it sounds like acknowledging giving a fair amount of credence to the effective life sentence that the defendant got in this case. And what I take to be their argument then is he did not express sufficient anguish on the record about the effect of that, which has no support in the law, that that is some burden of the district judge to do in sentencing at all. I suggest what this case really stands for, three particular propositions or three main themes that there is no gotcha game in sentencing. This court's always been clear that it's not a check the box system for judges on sentencing that they look to the record as a whole to see if you can see why the sentence was imposed. And in this case, the transcript reveals, I'd suggest to any reasonable person, that everybody in the courtroom was very actively engaged and earnestly trying to flesh out all of the issues that were involved in the sentencing in this case. Prosecutors, a lengthy, lengthy sentencing hearing with witnesses, elaborate discussions about issues including lengthy discussions from the defense, about mitigating factors including the effective life sentence. The judge in this case, I think, the waiver argument I'd emphasize more from the standpoint of simply being reflective of the effort to try and flesh out all of those issues from the judge, earnestly asking, have I addressed your arguments, Mr. Daisy? And Mr. Daisy, I think, mulls that over on the record, thinking through what else is going on, and then says, yes, I think you have, Your Honor. It's not a game of gotcha. They're trying to figure out, what are the issues here? Are we all doing the right thing? Which is everything that you can ask for in the record. And finally, maybe most importantly, the third point is that no fair, reasonable person could read this record and not understand why the judge imposed the sentence that he did. He goes over, by my calculation, close to ten pages of the 3553A factors in some detail, connection with the evidence he's heard at the hearing and the pre-sentence report, and continually comes back to the heinousness of the crime. No uncertain terms, and there imposes a less than 20% of the recommended guideline sentence, but is in fact, most likely a life sentence. But no one could mistake why he did it, and that's all this court can ask for. Who testified at the sentencing hearing? The victim, in particular his daughter, who was the most direct victim. A grandparent testified, and I think there was a neighbor perhaps, or maybe even the mother who testified, but at least those two testified in some way. It's a brave girl. How old was she at the time of the sentencing? She was sentencing, I believe, 15. So if the court doesn't have any other questions, the government will rest in its brief and ask that you affirm the sentence. Thank you. You can have one minute. Thank you, Your Honor. I appreciate that. The government's characterization of our argument is incorrect. And if there's any way that I've misstated, I want to make clear to the court, our argument is not that the district court gave proper consideration to the life sentence. Our argument is that the district court was given credence to Mr. Gine's arguments at sentencing, possibly the marginal deterrence argument. The judge sentenced far below guidelines. And that the judge may have sentenced even lower had the judge given proper consideration to the death of Mr. Gine's in prison. We would ask that this court just consider carefully if the sentencing judge stating, on the record, I've seen and heard those statistics before, I'm not sure I grasp them, meets this court's characterization that these life sentences have to be imposed very carefully. If there's no further questions, we would just ask that you vacate the sentence in remand. All right, thank you to both counsel. We'll take the case under advisement. Next case of the day, UF versus Olivo.